Keith Gregory GUENTHER, Appellant

v.

Rachelle Marie GUENTHER, Appellee.

No. 2011–CA–001165–ME.

Court of Appeals of Kentucky.

Sept. 14, 2012.

Carl E. Knochelmann, Jr., Covington, KY, for appellant.

Dean A. Pisacano, Covington, KY, for appellee.

Before CAPERTON, KELLER, and THOMPSON, Judges.

## OPINION

CAPERTON, Judge:

Keith Gregory Guenther appeals from the entry of a Domestic Violence Order ("DVO") entered by the Kenton County Family Court for the protection of Rachelle Marie Guenther. On appeal, Keith argues that the trial court lost jurisdiction by continuing the EPO/DVO hearing per the parties' agreement to continue for more than fourteen days after the filing of the Emergency Protective Order ("EPO") and that the trial court erred in entering the DVO without sufficient factual basis to establish that acts of domestic violence and abuse did occur and may occur again. Upon a thorough review of the parties' arguments, the record, and the applicable law, we conclude that the trial court did have jurisdiction to enter the DVO but erred in entering the DVO *sub judice,* as the record does not support by a preponderance of the evidence that domestic violence may occur again. Accordingly, we reverse the entry of the DVO and remand this matter for further proceedings.

The parties were divorced in 2007 and have two children. Keith and Rachelle rekindled their relationship in 2009 and Keith moved in with Rachelle at her residence. In May 2011, the parties had an altercation and Rachelle obtained an EPO against Keith on May 16, 2011. Keith was served with the EPO on the same day and a hearing was scheduled nine days later on May 25, 2011. At the hearing on May 25, 2011, both parties appeared with counsel and informed the court that they were attempting to reach an agreement on the DVO, with the possibility that the DVO be dismissed entirely. Rachelle requested that the court continue the EPO/DVO

hearing for two weeks. Keith either agreed or acquiesced to the continuance of the hearing for two weeks. The court then served both parties with a summons for a hearing on June 8, 2011, based on the originally entered EPO.

At the hearing on June 8, 2011, both parties were present with counsel. Rachelle testified that the basis for the EPO was an argument between the parties in May 2011 which ultimately resulted in Rachelle telling Keith to leave her house. The children were not at the residence at the time of the argument. Keith was packing up his personal effects, when Rachelle found what she believed to be her picture in Keith's box and took it out. Keith cursed at her, placed his hand on her wrist, and jerked the picture out of her hand; Rachelle heard her back pop, and was thrown to the ground. Rachelle called the police. The police arrived and supervised the removal of Keith's belongings.

Rachelle did not obtain medical treatment at that time. Rachelle testified that she suffered substantial pain and eventually went to a doctor, although no records were submitted to substantiate the visit. We note that during this testimony, Rachelle's counsel primarily asked leading questions often resulting in terse replies. Counsel asked if Keith had been verbally abusive to Rachelle to which she replied "yes." Counsel asked if she was afraid something like this would happen again[1] and she replied "yes."

Keith testified that the parties had been having disagreements resulting in Rachelle yelling profanities at him and asking him to leave the residence. Rachelle found a picture that she thought was hers in the items Keith had packed. He grabbed the picture and she lost her balance and fell. After Keith testified, the court announced from the bench that it found that an act of

---

1. We presume that counsel was referring to the altercation.

domestic violence had occurred and that Keith would be restrained from further acts of domestic violence. Thereafter, the court entered a DVO finding that an act of domestic violence had occurred and may occur again. It is from this order ·that Keith now appeals.

On appeal, Keith presents two arguments,[2] namely, (1) the trial court was without jurisdiction to enter a DVO more than fourteen days after the issuance of an EPO when Keith was properly served with the EPO; and (2) the trial court erred in entering the DVO without a sufficient factual basis to establish that acts of domestic violence and abuse did occur and may occur again as required by KRS 403.720 and 403.750. With these arguments in mind we turn to Keith's first argument, that the trial court was without jurisdiction to enter the DVO.

Keith argues that KRS 403.740 imposes a strict fourteen-day window during which a trial court must conduct an EPO hearing or lose its jurisdiction to enter a DVO thereafter. We disagree with his interpretation of the statute.

Of import, KRS 403.740(4)[3] states "An emergency protective order issued in ac-

---

2. The issue of abeyance is now moot in light of the fact that the Supreme Court has decided *Daugherty v. Telek*, 366 S.W.3d 463 (Ky. 2012). In *Daugherty*, our Supreme Court interpreted KRS 403.740(4) as not depriving the trial court of jurisdiction when a hearing is continued beyond the fourteen day period despite the fact that the parties were both properly before the court. The language of the statute at that time stated, "or as the court determines is necessary for the protection of the petitioner." While that language is no longer contained in the statute post-amendment, the statute as currently written does contain language which we believe allows the court to continue the hearing and retain jurisdiction of the hearing so continued.

3. The entirety of the statute currently states: (1) If, upon review of the petition, as provided for in KRS 403.735, the court determines that the allegations contained therein indicate the presence of an immediate and present danger of domestic violence and abuse, the court shall issue, upon proper motion, ex parte, an emergency protective order:
(a) Restraining the adverse party from any contact or communication with the petitioner except as directed by the court;
(b) Restraining the adverse party from committing further acts of domestic violence and abuse;
(c) Restraining the adverse party from disposing of or damaging any of the property of the parties;
(d) Restraining the adverse party from going to or within a specified distance of a specifically described residence, school, or place of employment of the petitioner, minor child of the petitioner, family member, or member of an unmarried couple protected in the order;
(e) Directing the adverse party to vacate the residence shared by the parties to the action;
(f) Utilizing the criteria set forth in KRS 403.270, 403.320, and KRS 403.822, grant temporary custody;
(g) Restraining the adverse party from approaching the petitioner or a minor child of the petitioner within a distance specified in the order, not to exceed five hundred (500) feet; or
(h) Enter other orders the court believes will be of assistance in eliminating future acts of domestic violence and abuse; or any combination thereof, except that the use of a global positioning monitoring system shall not be ordered.
(2) Except as provided in KRS 403.036, if the court issues an emergency protective order pursuant to subsection (1) of this section, the court shall not order or refer the parties to mediation for resolution of the issues alleged in the petition filed pursuant to KRS 403.735.
(3) An emergency protective order issued in accordance with this section shall be issued without bond being required of the petitioner.
(4) *An emergency protective order issued in accordance with this section shall be effective until the full hearing provided for in this subsection or in KRS 403.745, or until withdrawn by the court.* Upon the issuance of an emergency protective order, the court shall set a date and time for a full hearing,

cordance with this section shall be effective until the full hearing provided for in this subsection or in KRS 403.745, or until withdrawn by the court." KRS 403.740(4).

In interpreting a statute we adhere to the general and oft-repeated maxim that, "Our main objective is to construe the statute in accordance with its plain language and in order to effectuate the legislative intent." *Cromwell Louisville Associates v. Commonwealth,* 323 S.W.3d 1, 4 (Ky.2010), citing *Cabinet for Families and Children v. Cummings,* 163 S.W.3d 425, 430 (Ky.2005). Thus, we look to the language of the statute to "ascertain the intention of the legislature from the words used in enacting the statute rather than surmising what may have been intended but was not expressed." *Metzinger v.* *Kentucky Retirement Systems,* 299 S.W.3d 541, 546 (Ky.2009)(internal citations omitted). Accordingly, this Court will not supply additional words or make additions to intelligible statutes. *Metzinger* at 546.

Now we analyze the language of KRS 403.740. KRS 403.740 sets forth the procedures for the issuance and resultant hearing to be held on a petition for an EPO/DVO. Certainly, the statute states that a trial court must set a date and time for the conduct of a hearing upon issuance of an EPO, specifically within fourteen days. It also sets forth a meticulous procedure for the continuation of an EPO when service has not been made on the respondent. This is for the benefit of the parties. This limitation on the time period for the setting of a date and time for the

within fourteen (14) days as provided for in KRS 403.745, and shall summon the adverse party to appear. If, at the hearing, the adverse party is not present and has not been served, the emergency protective order shall remain in place, and the court shall direct the issuance of a new summons for a hearing set not more than fourteen (14) days in the future. If service has not been made on the adverse party prior to seventy-two (72) hours before that hearing or a subsequent hearing, the emergency protective order shall remain in place and the court shall continue the hearing and issue a new summons with a new date and time for the hearing to occur, which shall be within fourteen (14) days of the originally scheduled date for the continued hearing. Before issuing the new summons, the court shall note the length of time that has passed since the issuance of the emergency protective order, during which the adverse party has not been served. The court shall repeat the process of continuing the hearing and reissuing a new summons after noting the lapse of time since the issuance of the emergency protective order until the adverse party is served at least seventy-two (72) hours in advance of the scheduled hearing. In issuing the summons, the court shall simultaneously transmit a copy of the summons or notice of its issuance and provisions to the petitioner.

(5) The adverse party shall be personally served with a copy of the emergency protective order, a copy of the summons setting the full hearing, and a copy of the petition. Service may be made in the manner and by the persons authorized to serve subpoenas under the provisions of Rule 45.03 of the Rules of Civil Procedure. No service fee shall be assessed to the petitioner.

(6)(a) The provisions of this section permitting the continuance of an emergency protective order shall be limited to six (6) months from the issuance of the initial emergency protective order.

(b) If the respondent has not been served within the six (6) month period, the emergency protective order shall be rescinded without prejudice. Prior to the expiration of the emergency protective order, the court shall provide notice to the petitioner stating that if the petitioner does not file a new petition the order shall be rescinded without prejudice.

(c) A new emergency protective order shall not be issued by the court unless the petitioner files a new petition, which shall start the six (6) month process again.

(d) The total length of time that a series of emergency protective orders may remain in effect without the respondent being served shall not exceed two (2) years.

KRS 403.740 (emphasis added).

hearing brings the parties before the court and envisions the petitioner having a quick resolution of the issues as well as protects the respondent from being deprived of rights he or she might otherwise have but for the EPO.

In the case *sub judice,* the respondent argues that, despite the joint motion of the petitioner and respondent to continue the hearing or, alternatively, respondent or petitioner's acquiescence to the motion of the other to continue the hearing beyond the fourteen-day period, that the continuation of the hearing beyond the fourteen-day period deprived the court of jurisdiction to issue a DVO. We find such argument to be based upon an incorrect interpretation of KRS 403.740.

The first sentence of the KRS 403.740 prior to the 2010 amendment reads, "An emergency protective order issued in accordance with this section shall be effective for a period of time fixed in the order, but not to exceed fourteen (14) days." The statute now reads, "An emergency protective order issued in accordance with this section shall be effective until the full hearing provided for in this subsection or in KRS 403.745, or until withdrawn by the court." The legislature specifically deleted the language that limited the effectiveness of an EPO based on a petition to fourteen days and, in its stead, amended the statute to specifically allow an EPO to be effective until a hearing or withdrawn by the court.

The statute continues on to state that a date and time for a full hearing shall be set within fourteen days, but does not state that the hearing must be conducted and not continued. And, if the hearing is continued, then the effectiveness of the EPO can be continued until the next anticipated hearing which shall be set within fourteen days of the date from which it was continued. If the legislative intent had been for the court to conduct such a hearing and not give the court discretion to continue the hearing beyond the aforementioned fourteen days, it would not have included the language *or until withdrawn by the court.*

We believe our interpretation is consistent with the guidance given by our Supreme Court recently in *Daugherty v. Telek,* 366 S.W.3d 463 (Ky.2012). Therein the Supreme Court analyzed the language of KRS 403.740 as then written and prior to the amendments of July 2010. While our interpretation is of the statutory language as amended, we see little difference in the effect of the language as it existed and was interpreted by *Daugherty* and as it now exists.

Succinctly, the plain language of either statute allows a court to continue the EPO protection to the petitioner, without depriving the court of jurisdiction over the subject matter or the parties properly before the court. If it had been the intent of the legislature to mandate that the fourteen-day hearing be held without regard to the inherent ability of our courts to control the timing of such proceedings, our Supreme Court would surely have found that to be the case in *Daugherty.* It did not so hold based on the language as it then existed; nor shall we now issue such an opinion based on the current statutory language.

■ The question then becomes when should such hearings be continued? In answering this question we consider the circumstance now before our court, namely, whether a hearing on a petition for an EPO/DVO may be continued by the court based upon the agreement of the parties. To analyze the propriety of such a continuance, we must look to the reasons behind having a hearing within the fourteen-day time period.

A timely hearing is for the benefit of both parties in assuring a quick resolution of the matter at what can be a very volatile

time in their lives. Certainly a quick resolution of the parties' differences allows them to accept the situation and plan for their future. Second, it allows the respondent a quick resolution because the EPO/DVO may deprive him or her of rights or may bar the respondent from certain activities. The opportunity for a hearing comports with due process in giving the respondent the opportunity to challenge the allegations and have the EPO/DVO dismissed or satisfactorily disposed of. Thus, a succinct resolution of the matter is for the protection and benefit of the parties.

As discussed in *Rankin v. Criswell*, 277 S.W.3d 621, 624 (Ky.App.2008), domestic violence proceedings are not criminal matters, but the consequences for both parties are significant. And, as quoted in *Wright v. Wright*, 181 S.W.3d 49 (Ky.App.2005), entry of a DVO has significant and oft times far reaching effects:

The filing of a DVO petition has enormous significance to the parties involved. If granted, it may afford the victim protection from physical, emotional, and psychological injury, as well as from sexual abuse or even death. It may further provide the victim an opportunity to move forward in establishing a new life away from an abusive relationship. In many cases, it provides a victim with a court order determining custody, visitation and child support, which he or she might not otherwise be able to obtain. The full impact of EPOs and DVOs are not always immediately seen, but the protection and hope they provide can have lasting effects on the victim and his or her family.

On the other hand, the impact of having an EPO or DVO entered improperly, hastily, or without a valid basis can have a devastating effect on the alleged perpetrator. To have the legal system manipulated in order to "win" the first battle of a divorce, custody, or criminal proceeding, or in order to get "one-up" on the other party is just as offensive as domestic violence itself. From the prospect of an individual improperly accused of such behavior, the fairness, justice, impartiality, and equality promised by our judicial system is destroyed. In addition, there are severe consequences, such as the immediate loss of one's children, home, financial resources, employment, and dignity. Further, one becomes subject to immediate arrest, imprisonment, and incarceration for up to one year for the violation of a court order, no matter what the situation or circumstances might be.

*Wright* at 52.

■ Just as a timely hearing envisioned by the statute allows the parties to protect their rights, so does a continuance of the hearing by their mutual agreement allow the parties to have some control over their case.[4] Certainly any continuance of the hearing should be in the sound discretion of the court, mindful of the purposes of the statute, and for good cause. Accordingly, we now hold that KRS 403.740 [5] does not prohibit a court from granting a continuance of the fourteen-day hearing on a petition for an EPO/DVO.

We now turn to Keith's remaining argument, that the trial court erred in entering

4. The trial court is in the best position to determine whether a continuance is needed by the parties when considering their agreement to continue the hearing. A trial court may, at its discretion, either grant or deny such a motion and may take into consideration whether an agreement has been coerced or based on some impropriety.

5. Also, we differentiate between the hearing conducted under KRS 403.740 where the protections of an EPO are in place and a hearing under KRS 403.745 where protections are lacking because an EPO was not issued. We make no decision as to the propriety of continuing a KRS 403.745 hearing.

the DVO without a sufficient factual basis to establish that acts of domestic violence and abuse did occur and may occur again as required by KRS 403.720 and 403.750.

■ In order to issue a DVO, the court must conduct a hearing as provided for in KRS 403.740 or 403.745 and may only enter a DVO if the petitioner shows that by "a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur...." KRS 403.750(1); *Bissell v. Baumgardner,* 236 S.W.3d 24, 29 (Ky.App.2007). The preponderance of the evidence standard is met when the evidence establishes that the petitioner, "was more likely than not to have been a victim of domestic violence." *Commonwealth v. Anderson,* 934 S.W.2d 276, 278 (Ky.1996); *Baird v. Baird,* 234 S.W.3d 385, 387 (Ky.App.2007). The definition of domestic violence and abuse, found in KRS 403.720(1), includes "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members...."

We bear in mind that in reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial court were clearly erroneous or that it abused its discretion. *Cherry v. Cherry,* 634 S.W.2d 423, 425 (Ky.1982); CR 52.01; *Reichle v. Reichle,* 719 S.W.2d 442, 444 (Ky.1986). Findings are not clearly erroneous if they are supported by substantial evidence. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003). Substantial evidence is evidence of sufficient probative value that permits a reasonable mind to accept as adequate the factual determinations of the trial court. *Id.* A reviewing court must give due regard to the trial court's judgment on the credibility of the witnesses. *Id.* "Abuse of discretion in relation to the exercise of judicial pow-

er implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision." *Kuprion v. Fitzgerald,* 888 S.W.2d 679, 684 (Ky.1994) (citations omitted). Thus, the trial court should undertake its assessment of the testimony presented in light of the dire consequences that may result to either or both parties.

■ While we are mindful of the trial court's difficult role, we agree with Keith that the record *sub judice* does not support a finding that by a preponderance of the evidence that an act or acts of domestic violence and abuse may again occur in the future as contemplated by KRS 403.750 or KRS 403.720.

Rachelle's monosyllabic responses to her attorney's leading questions regarding verbal abuse and her fear of future abuse similar to the altercation between the parties is insufficient to base a finding that domestic violence *may* occur again. Thus, we reverse the decision of the trial court because entry of a DVO based on the evidence presented exceeded the discretion of the court. We remand to the trial court for it to vacate the DVO and, if appropriate, enter an EPO and conduct further proceedings thereon consistent with this opinion.

In light of the aforementioned, we reverse and remand this matter for further proceedings not inconsistent with this opinion.

THOMPSON, Judge, Concurs.

KELLER, Judge, concurs in result only in part and dissents in part and files separate opinion.

KELLER, Judge, concurring in result only in part and dissenting in part:

I concur in result only as to the Majority's conclusion that the trial court had

jurisdiction and that it properly continued the domestic violence hearing. However, I disagree with the Majority's conclusion that there was insufficient evidence presented at the domestic violence hearing to enter the DVO. As set forth in *Caudill v. Caudill,* 318 S.W.3d 112, 114–15 (Ky.App. 2010):

> Prior to entry of a DVO, the court must find "from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur...." The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence. The definition of domestic violence and abuse, as expressed in KRS 403.720(1), includes "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family. members...." The standard of review for factual determinations . is whether the family court's finding of domestic violence was clearly erroneous. Findings are not clearly erroneous if they are supported by substantial evidence. "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial judge were clearly erroneous or that he abused his discretion." Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious.

(Citations omitted).

Having carefully reviewed the record, I cannot say that the trial court's findings were clearly erroneous. As noted by the Majority, Rachelle testified that Keith grabbed her wrist and jerked the picture out her hand so hard that she heard her back pop. Keith then threw Rachelle to the ground. Keith testified that he grabbed the picture out of Rachelle's hand and that Rachelle lost her balance and fell. Based on Rachelle's testimony, I cannot say that the trial court, as the fact-finder, abused its discretion in concluding that an act of domestic violence occurred. *See Buddenberg v. Buddenberg,* 304 S.W.3d 717, 720 (Ky.App.2010) (noting that the trial court is in the best position to judge the credibility of the witnesses and weigh the evidence presented).

As to whether domestic violence may occur again, the Majority holds that Rachelle's monosyllabic responses to leading questions are not sufficient evidence to support the court's finding. I disagree for four reasons. First, I do not necessarily agree that the question asked by counsel regarding the likelihood of a reoccurrence of violence was a leading question. A leading question is "one that suggests the answer to the person being interrogated, esp., a 'yes' or 'no.'" *Black's Law Dictionary* 897 (7th ed.1999). Counsel asked Rachelle, "Are you fearful that these actions of domestic violence will occur again?" That is not a leading question because it is neutral. It does call for a yes or no answer, but it does not suggest which of those answers is correct.

Second, even if the question was leading, "judgments will not be reversed because of leading questions unless the trial judge abused his discretion and a shocking miscarriage of justice resulted." *Bailey v. Bailey,* 231 S.W.3d 793, 796 (Ky.App.2007). I discern no abuse of discretion because a victim's fear of continued domestic violence is a key element necessary to support a DVO. I know of no better way to elicit that information than to ask the victim.

Third, although it might have been better if Rachelle had expanded on her answer, she was not required to do so. The trial court is permitted to believe or disbelieve any sufficiently probative evidence

presented, and the length of a response is not indicative of its sufficiency or probative value.

Fourth, Keith was present during the hearing and had the opportunity to present evidence to contradict Rachelle's testimony. The trial court determined that he did not do so, and it is not for this Court to second guess that determination.

Therefore, I agree that the trial court did not err when it continued the DVO hearing; however, I disagree that there was insufficient evidence to support the trial court's issuance of a DVO. Accordingly, I would affirm.