Michael **ASHLEY**, Appellant

v.

Ashley **ASHLEY**, Appellee

NO. 2016–CA–001468–ME

Court of Appeals of Kentucky.

MAY 5, 2017; 10:00 A.M.

---

BRIEF FOR APPELLANT: Adam Cart, Elizabethtown, Kentucky

BRIEF FOR APPELLEE: Barry Birdwhistell, Elizabethtown, Kentucky

BEFORE: JONES, J. LAMBERT, AND MAZE, JUDGES.

## OPINION

LAMBERT, J., JUDGE:

Michael Ashley has appealed from the Hardin Family Court's domestic violence order (DVO) and the order denying his motion to reconsider the entry of the DVO. Because we hold that the family court did not abuse its discretion in entering the DVO, we affirm the orders on appeal.

This matter began with the filing of a petition for an order of protection on August 31, 2016, by Michael's wife, Ashley Ashley, on her and their three minor children's behalf. In the petition, Ashley stated that two days before, on August 29, 2016,

My husband & I got into an argument. He threatened to have the kids taken away from me since the house was a wreck. He picked up the phone & said "911." Then he continued to yell at me, threw the phone at me but it missed & hit the pantry, & then he came in the kitchen & hit my wrist as I was fixing supper, causing my fingers to hit the bowl. I told him not to touch me & he started screaming more & I thought he was going to hit me but then 911 called back. He had been drinking and left before the cops showed up. All three of our children were in the house & witnessed all of this & were hysterical. He has access to the house & came back twice the next day & made me very uncomfortable. His behavior through texts & phone calls since has been very unpredictable, including threatening to end his own life.

The court entered an emergency protective order (EPO) the same day, granted temporary custody of the children to Ashley, and notified Michael of the scheduled DVO hearing through service of the EPO.

The court held the DVO hearing on September 12, 2016. At the start of the hearing, Ashley's counsel indicated that a dissolution petition had been filed and that she was seeking a six-month order with exceptions fashioned to permit Michael to see the children's sporting events. Ashley testified about the events of August 29, 2016, when she and Michael got into an argument that escalated. He screamed at her and threatened to call CPS to take the children away from her because the house was a mess. He called and hung up on 911. The children were upset, and Ashley went into the kitchen to remove herself from and de-escalate the situation. Michael followed her into the kitchen, where she was trying to make supper, and hit her across the arm, causing her hand to hit a bowl. She thought he was going to hit her again when 911 called back. Michael had been drinking, and he left the house at that time. She was concerned for her safety.

Michael was not represented by an attorney and asked for legal representation. The court did not have any statutory authority to appoint an attorney for him in this action. Rather, Michael would have to hire an attorney. Michael opted to tell his side of the story rather than having the matter passed for a week to allow him to hire an attorney. Michael testified that he and Ashley had not been getting along for three or four months. The day of the incident, Ashley was mad at him because he did not help get the football helmets at football practice. She told him she wanted him to leave. He admitted to having been drinking, and he followed Ashley into the kitchen to ask her why she wanted him to leave. A piece of a tortilla chip came out of his mouth and landed on her arm, and he smacked it off of her arm. Michael had never laid a hand on her the whole time they had been together. He said he was going to call 911 to have CPS take the children because the house was a mess, but he changed his mind when his son came into the kitchen. He admitted that he used too much force to knock the chip from Ashley's arm and apologized for doing that. Michael was going to start anger management classes in October. Ashley said she was scared when he hit the chip off of her arm and that she did not know what would have happened if 911 had not called back. She said he sent her a text message that night stating he was going to kill himself.

At the conclusion of the hearing, the court entered a six-month DVO, effective until March 12, 2017, finding that by a preponderance of the evidence, Michael had committed an act of domestic violence and that it may again occur. Michael was

restrained from committing further acts of abuse or threats of abuse, stalking, or sexual assault; from any unauthorized contact or communication with Ashley and the children; to remain 500 feet away from Ashley and the children; from being within 500 feet of the marital residence; and from disposing of or damaging any of the parties' property. Michael was permitted to attend all of the children's games and practices, but was not permitted to have any interaction with Ashley. Ashley was given temporary custody of the children, and Michael was permitted to visit with the children from 2:00 p.m. to 5:00 p.m. on Sundays, supervised by the maternal grandmother. The court ordered Michael to participate in counseling services, including Certified Domestic Violence Batterer Intervention, to obtain mental health and drug/alcohol evaluations and to follow the recommendations, and to take age appropriate parenting classes. The court scheduled a show cause hearing for October to make sure Michael was complying with its orders.

Michael, through an attorney, moved the family court to reconsider or vacate the DVO because the court held the DVO hearing while Michael was without counsel despite his concern that he might need an attorney to protect his interests. He stated that he had never performed any criminal acts related to violence or threatened violence, and he had never been accused of being a threat to his wife during their 18–year marriage. Ashley waited two days before filing her petition, after he had texted her to say that he was obtaining his own residence and wanted to have shared custody of the children. Finally, he argued that the evidence did not support the entry of the DVO. The only physical contact he had with Ashley was when he smacked a tortilla chip from her arm, which did not amount to a physical injury or inflict the fear of imminent injury on her. There was no evidence of threats of harm to the children.

The court held a hearing on the motion, where Michael argued that the evidence did not support the entry of the DVO. Ashley objected to the motion, stating that Michael admitted on the record to striking her when the children were present and that he had been drinking. She said she filed the original petition two days later after Michael returned to the house unannounced and she was afraid for her and the children's safety. The court stated that based upon the testimony that Michael was intoxicated and inferences that more was going on, Ashley had a legitimate reason for being fearful that she was in imminent danger of bodily harm. The court denied the motion in an order entered September 27, 2016. This expedited appeal now follows.

On appeal, Michael argues that there was insufficient evidence to support the entry of the family court's DVO as well as the stringent conditions it imposed upon him. Ashley, on the other hand, argues that the court did not commit any error in entering the DVO based upon the evidence presented.

█ At the outset, we recognize that the DVO entered by the family court expired on March 12, 2017. The expiration does not affect the validity of this appeal: "The continuing consequences of the DVO persuade us this appeal is not moot and resolution is required." *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010).

Turning to the merits of the appeal, Kentucky Revised Statutes (KRS) 403.740(1) provides that "[f]ollowing a hearing ordered under KRS 403.730, if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence or-

der[.]" KRS 403.720(1) defines "[d]omestic violence and abuse" as "physical injury, serious physical injury, stalking, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]"

In *Caudill*, this Court instructed that "[t]he preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Caudill*, 318 S.W.3d at 114, *citing Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007). Our standard of review is whether the court's finding of domestic violence is clearly erroneous pursuant to Kentucky Rules of Civil Procedure (CR) 52.01, and findings of fact "are not clearly erroneous if they are supported by substantial evidence." *Id.* at 114–15, *citing Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

> "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982) (citation omitted). Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious. *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky. 1994) (citations omitted).

*Caudill*, 318 S.W.3d at 115. Finally, the *Caudill* Court cautioned that "[w]hile domestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence, the construction cannot be unreasonable." *Id.* (internal quotation marks and citations omitted).

Michael argues in his brief that Ashley did not show by a preponderance of the evidence that any physical injury occurred, that she was in fear of her and the children's safety, or that an act of domestic violence had occurred or would occur in the future. In support of his argument, Michael cites to *Guenther v. Guenther*, 379 S.W.3d 796 (Ky. App. 2012), in which this Court reviewed and ultimately reversed the entry of a DVO. *Id.* at 802. The factual recitation establishes that the former but reconciled spouses got into an altercation when the former wife picked up a picture from the former husband's box while he was packing. He yelled at her, put his hand on her wrist, and jerked the picture out of her hand, causing her back to pop, and she fell to the ground. *Id.* at 797.

In the present case, Michael contends that the factual circumstances surrounding the allegation of domestic violence in *Guenther* are similar to the present case, in that he had only minor physical contact with Ashley when he smacked her arm to remove the chip. However, the *Guenther* Court did not address whether an act of domestic violence had occurred; rather, the Court decided the case on the lack of evidence that an act of domestic violence or abuse may occur again in the future. *See id.* at 802.

Michael also relies upon both *Caudill*, *supra*, and *Telek v. Daugherty*, 376 S.W.3d 623 (Ky. App. 2012), for the proposition that an "unwanted touching" is not sufficient to satisfy the definition of domestic violence and abuse. The trial court in *Caudill* stated it based the DVO on the one time that the husband pushed the wife out of the way in order to enter the house. This Court held that the unwanted touching, by itself, did not establish domestic violence and abuse pursuant to KRS 403.720(1). *Id.* at 115. Similarly, in *Telek v. Daugherty*, we reversed the entry of a

DVO, holding that Samantha failed to establish that an act of domestic violence had occurred:

> The family court in this case was unable to articulate much more than that "something happened" and that John had touched and pushed Samantha. We cannot hold that this is sufficient in light of our holding in *Caudill* that Bart's action in pushing Kathryn out of the way to enter the house was not enough to establish that an act of domestic violence had occurred. John's actions appear more akin to the "unwanted touching" the *Caudill* Court mentioned, which standing alone would not meet the definition of domestic violence.

*Telek v. Daugherty*, 376 S.W.3d at 628.

In the present case, we cannot hold that the incident where Michael smacked the chip off of Ashley's arm constituted a physical injury within the definition of domestic violence or abuse. However, the definition also includes "the infliction of fear of imminent physical injury," which we hold Ashley established by a preponderance of the evidence. She testified under questioning by her attorney and the family court that she feared for her safety after Michael, who was intoxicated, smacked the chip off of her arm and that she did not know what would have happened if 911 had not called back at that moment. Michael admitted that he might have struck Ashley with more force because he had been drinking. But what pushed this into the realm of domestic violence was Michael's text message to Ashley threatening to commit suicide.[1] Therefore, we hold that the record supports the family court's finding that domestic violence and abuse occurred.

Next, we shall consider whether Ashley established by a preponderance of the evidence that domestic violence and abuse may occur again. Michael relies upon *Guenther* to support his position that Ashley's responses were not adequate to support a finding of future domestic violence. In *Guenther*, this Court held that "Rachelle's monosyllabic responses to her attorney's leading questions regarding verbal abuse and her fear of future abuse similar to the altercation between the parties is insufficient to base a finding that domestic violence *may* occur again." *Guenther*, 379 S.W.3d at 802. That was not the case at the DVO hearing in this action; while Ashley was asked some yes or no questions, she testified more fully upon questioning by both her attorney and the family court as to her fears. We also find no merit in Michael's argument in the motion to reconsider that Ashley's filing for dissolution and custody of the children after obtaining the EPO was meant to garner an advantage in the dissolution proceeding; that has no relevance in the DVO action. We hold that based upon the escalation of their arguments, Michael's alcohol use, and his suicide threat, the family court had sufficient evidence before it to determine that domestic violence may occur in the future.

Accordingly, because Ashley proved by a preponderance of the evidence that domestic violence and abuse had occurred and may again occur, we hold that the family court did not abuse its discretion in entering the six-month DVO.

For the foregoing reasons, the domestic violence order of the Hardin Family Court is affirmed.

ALL CONCUR.

---

1. The record reflects that Michael has a concealed carry license.