RENDERED: FEBRUARY 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0263-ME

DAVID KHAZAI                                                                 APPELLANT

v.                          APPEAL FROM JEFFERSON CIRCUIT COURT
                            HONORABLE TARA HAGERTY, JUDGE
                            ACTION NO. 21-D-503463-001

SHAHPAR SHAHAB                                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, JONES, AND McNEILL, JUDGES.

JONES, JUDGE: David Khazai appeals from a domestic violence order (DVO) the Jefferson Family Court entered against him in favor of Shahpar Shahab. In sum, he argues the operative statutes that guided the family court's analysis are unconstitutional, and that insufficient evidence supported the family court's decision. We find no error and affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 5, 2021, Shahpar petitioned the Jefferson Family Court to dissolve her marriage with David Khazai. The next day, she filed a motion for an emergency protection order (EPO) against him. In her motion, she alleged David was on his way home from overseas to punish her for defying him; and that she was terrified of what he would do to her, particularly because he owned several firearms and had subjected her to years of physical abuse and death threats. The family court granted Shahpar's motion that same day. The day afterward, David was notified of the divorce proceedings and served with Shahpar's EPO.

The family court revisited this matter during an evidentiary hearing on February 8, 2022, for purposes of determining whether a DVO should issue. There, Shahpar asserted David had committed an act of domestic violence and several violations of the EPO since the EPO was issued. After considering testimony and evidence from Shahpar and David, the family court granted Shahpar a DVO effective against David for the next three years. This appeal followed. Additional facts will be discussed as necessary in the context of our analysis.

## II. STANDARD OF REVIEW

> Kentucky Revised Statutes (KRS) 403.740(1) provides
> that "[f]ollowing a hearing ordered under KRS 403.730,
> if a court finds by a preponderance of the evidence that
> domestic violence and abuse has occurred and may again
> occur, the court may issue a domestic violence order[.]"
> KRS 403.720(1) defines "[d]omestic violence and abuse"

as "physical injury, serious physical injury, stalking, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]"

*Ashley v. Ashley*, 520 S.W.3d 400, 403-04 (Ky. App. 2017).

The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence. *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007). . . . The standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous. [Kentucky Rules of Civil Procedure (CR)] 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). Findings are not clearly erroneous if they are supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

*Caudill v. Caudill*, 318 S.W.3d 112, 114-15 (Ky. App. 2010).

"[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Moore*, 110 S.W.3d at 354 (footnotes and citations omitted).

> "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982) (citation omitted). Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious. *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky. 1994) (citations omitted).

*Caudill*, 318 S.W.3d at 115.

### III.    ANALYSIS

On appeal, David dedicates one sentence of his brief to arguing either KRS 403.730 or KRS 403.740 are "void for vagueness." It is unnecessary to address this point beyond stating it is improperly before us: David did not raise it below, nor has he ever notified the Attorney General of Kentucky about his contention. *See Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989) ("The Court of Appeals is without authority to review issues not raised in or decided by the trial court."); *see also Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky. 2008) (explaining "strict compliance with the notification provisions of KRS 418.075 is mandatory[,] meaning that even in criminal cases, we have refused to address arguments that a statute is unconstitutional unless the notice provisions of KRS 418.075 had been fully satisfied" (citations omitted)).

Next, David argues there was insufficient evidence supporting the family court's findings that, pursuant to KRS 403.740(1), domestic violence and abuse occurred and may again occur. We disagree.

The basis of the family court's decision to grant Shahpar's DVO motion was its determination that David had inflicted and likely would continue to inflict fear of imminent physical injury or serious physical injury upon Shahpar. Regarding whether this type of domestic violence and abuse had occurred, the family court focused upon an alleged incident of October 7, 2021. Before discussing that incident, however, some background is necessary. Shahpar testified her primary motivation for obtaining an EPO against David was a conversation the two of them had over the telephone on or about October 6, 2021. David, who was on a business trip in Turkey, called Shahpar and asked her to set up a fake email address and send him money via Bitcoin. Shahpar refused to do so and accused him of having an affair. David then threatened to punish her.

Shortly after their conversation, Shahpar discovered David had used a credit card to purchase a plane ticket back to Louisville where they resided. Shahpar testified this discovery caused her to vacate the marital residence, seek an EPO against David, and hide from him. Shahpar testified she was motivated to do so because David owned several firearms; and on numerous prior occasions, David had told her he was her "king," that if she "acted up" or left him, he would kill her

and "bury" her "by the pool," and that he was unafraid of any legal consequences that might ensue because he could flee to Turkey to avoid prosecution.[1]

As indicated, the alleged domestic violence incident occurred the following day. David and Shahpar derive marital income from their ownership of three businesses: a rug store in Louisville; a rug store in Lexington; and a software company. Shahpar manages the Louisville rug store, and it is adjacent to the offices of the software company, which is managed by David. Shahpar testified that on the morning of October 7, 2021, she went to the Louisville rug store to attend scheduled appointments with customers. She did not see David or his vehicle when she arrived, so she entered the store and went upstairs to the bathroom to fix her hair, closing the door behind her but leaving it unlocked. She testified David then kicked open the door and attempted to grab her by the back of her neck. She screamed to catch the attention of the two employees working at the store that morning and was able to close and lock the door. David left the store, and Shahpar called the police.

During the evidentiary hearing, Shahpar testified that this incident, taken in context with David's prior threats, caused her to fear for her life. The family court found her testimony credible and accordingly determined that an act

---

[1] Shortly before the February 8, 2022 evidentiary hearing, David returned to Turkey. The hearing was conducted through video conferencing (*i.e.*, Zoom) and over the telephone, and David participated remotely.

of domestic violence had occurred. Substantial evidence supported its finding, and we find no clear error in this respect. CR 52.01.

With that said, we now proceed to the family court's additional finding that domestic violence and abuse was likely to reoccur. Shortly after the October 7, 2021 incident, authorities located David and served him with the EPO. At that point, David also learned that Shahpar had filed for divorce. Since that time, David has been arrested three times and has served a total of sixty days' imprisonment for repeatedly violating the EPO.[2] The details of his arrests are not of record, but evidence supports that David continued threatening Shahpar by various means. For example, Shahpar testified that as recently as a few days before the evidentiary hearing, David attempted to run her off the road while she was driving. Shahpar also testified that while the EPO was in effect, David stated in conversations with her brother and sister, and to her through several voicemail messages, that he would "kill" and "destroy" her, "burn down everything," and ensure she was "miserable."

Additionally, Shahpar testified she believed David convinced or encouraged third parties to threaten her. She asserted David's friends and

---

[2] David concedes he entered an *Alford* plea in December 2021 for violating the no-contact provisions of the EPO. *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Shahpar also represents in her brief that David has pled guilty to multiple other violations of the EPO, but the record before us includes no such information.

employees have followed her in their vehicles, and that she has driven to police stations three or four times to discourage them from maintaining pursuit. She also testified about incidents involving a man named "Mehdi." On one occasion, Mehdi chased her into a street. On another occasion, Mehdi walked into her rug store, told a customer to leave, and threatened to kill her. Apart from that, Mehdi excessively messaged Shahpar, offering her sex. On November 1, 2021, he sent her pictures – taken from inside the kitchen of her marital residence – of a photograph of her family, her passport, a machine gun, and ammunition.[3] She testified that contemporaneously with the pictures, Mehdi messaged Shahpar that he would return her passport and other personal items for $50,000, and further stated, "come and sit down and negotiate with me and Mr. Khazai. Otherwise, we are going to destroy you."

David did not deny that Mehdi was his friend, or that Mehdi had communicated with Shahpar as she had described in her testimony. He claimed, however, that Mehdi was mentally disturbed and had acted on his own volition, not at his direction. His counsel also represented to Shahpar during cross-examination

---

[3] As stated, the evidentiary hearing was conducted remotely through Zoom. Shahpar apparently shared these photographs from her cell phone through Zoom; it is apparent from the trial footage that the family court reviewed these photographs during its hearing and admitted them as evidence after Shahpar shared them, as it referred to them in its written order as "Pet. Ex. 1;" and there is no dispute that these pictures were taken, or about their content. However, we are unable to independently review any of the demonstrative evidence adduced through Zoom during the hearing because the video of the evidentiary hearing only features the presiding judge and the interior of the courtroom, rather than any part of the Zoom teleconference.

that Mehdi had recently been hospitalized pursuant to a medical inquest warrant. Shahpar testified she was aware of Mehdi's mental condition. However, she further testified that as far as she was aware, Mehdi has had the same mental condition since she came to know him in 2018; that she had a civil relationship with Mehdi prior to attempting to divorce David; and that David knew Mehdi well enough to manipulate him. Considering the substance of Mehdi's threats, Shahpar testified she believed David had manipulated Mehdi to threaten her on his behalf. At the conclusion of her testimony, Shahpar stated she feels unsafe "now and forever" due to David's conduct.

For his part, David acknowledged violating the EPO on two occasions, but denied any wrongdoing. He testified that he never threatened to punish Shahpar; that she had never given him any indication that she had felt threatened by him; and that he could prove both of these points because he had recorded their telephone conversations while he was in Turkey from August 14, 2021, through October 6, 2021. David also testified Shahpar had an incentive to lie about being abused by him, contending he had caught her "skimming" a total of $162,000 from their marital businesses, adding, "she has taken everything from me and she still wants more."

As indicated, the family court ultimately found in favor of Shahpar. The family court summarized the evidence presented and generally stated its

findings in its written order, but it provided more detailed findings from the bench at the conclusion of the evidentiary hearing. In sum, the family court acknowledged the parties were involved in a hotly contested divorce with substantial assets at stake. However, with respect to the dispositive issues, it deemed Shahpar the more credible witness, and found that further domestic violence was likely to occur in the absence of a DVO. In support, it considered David's admitted violations of the EPO. It considered what it deemed was his "controlling" behavior exemplified by his admitted practice of recording his conversations with Shahpar. It inferred David held continuing animosity toward Shahpar, based upon his statement that "she has taken everything from [him] and she still wants more." It determined, based on the evidence presented, that it was more likely than not that David had influenced Mehdi to threaten Shahpar as she had testified.

Upon review, we cannot say that the family court's findings are indicative of clear error. Rather, the family court's decision was consistent with the evidence of record, and the weight that the family court chose to assign it. CR 52.01.

## IV. CONCLUSION

In light of the foregoing, we AFFIRM.

ALL CONCUR.


BRIEF FOR APPELLANT:        BRIEF FOR APPELLEE:

C. Thomas Hectus             Corey Shiffman
Louisville, Kentucky        Christine Shiffman
                              Louisville, Kentucky