RENDERED:  AUGUST 22, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0969-ME

JEFFREY DWAYNE ASHBY　　　　　　　　　　　　　APPELLANT


v.　　　　APPEAL FROM JEFFERSON CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE DENISE DEBERRY BROWN, JUDGE
ACTION NO. 24-D-502213-001


DEBBIE LASHEAN ASHBY　　　　　　　　　　　　　APPELLEE


OPINION
AFFIRMING


** ** ** ** **

BEFORE:  LAMBERT, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Jeffrey Dwayne Ashby, *pro se*, brings this appeal from a July 8, 2024, Domestic Violence Order (DVO) entered by the Jefferson Family Court. We affirm.

BACKGROUND

The parties to this appeal are husband and wife. They separated on April 27, 2024. On June 11, 2024, Debbie LaShean Ashby filed a petition for dissolution of marriage in the Jefferson Family Court (Action No. 24-CI-501669).

Shortly thereafter, on June 21, 2024, Debbie filed a Petition for Order of Protection in the family court against Jeffrey. In the petition, Debbie alleged the following:

> On June 16, 2024, I received a phone call from Jeffrey on a different phone number. I had hung up. Because I had told him to stop calling me or having other people call me. I had explained to Jeffrey that we would not be getting back together, but he refuses to listen to me. He had made numerous attempts to contact me through emails, phone calls, people that he knows, he had contacted my children, also sent letters to my address. Now I had told him he is harassing me, that he needs to stop bothering me. He refuses. Every since I filed for divorce, he had gotten worst by harassing me in any thing he can do, to try and get my attention. He had threatening my job, by contacting corporate by telling lies. He kept calling my phone again over and over and over on the 16th of June. I have 14 voice messages on my phone that I had kept. I also received a letter in the mail. He is constantly harassing me on a daily basis, were I have family and my managers as my witness. This past Monday, June 17th, 2024, I had a voicemail at 1:37 am that he had shot himself in the chest. I also received another voicemail on 6/17/24 at 2:03 am that he had been rushed to U of L hospital. His DR. had reached out to me to give me information about his condition because he had gave them my number. I spoke to Dr. Jolk today 6/20/24 and she explained to me that he shot himself in the chest, because he seen that I had filed for

-2-

divorce. Now hearing this made me scared of my safety, because if he can shoot himself, he can come and try to shoot me. He's harassing me daily and I'm scared. His DR. asked me questions about his mental. [H]e is diagnosed, Bipolar, [S]chizophrenic, he hears voices in his head, sometimes he be talking to himself, he is depressed and he is suicidal. I need the protection to be safe, because I'm scared. He does not live with me, he has left the house since 4/27/24 and he has been deranged and crazy every since he knows I filed for divorce. I work everyday and he keeps calling my phone on my job everyday. [sic]

Record (R.) 1-2. On June 21, 2024, the family court issued an emergency protective order (EPO). On the same day, the Jefferson County Sheriff's Department served Jeffrey at the hospital with notice of the DVO hearing and a notice to surrender firearms.

On July 3, 2024, both parties, *pro se*, appeared before the court at the DVO hearing. The family court placed both parties under oath and read the Petition into the record, which Debbie adopted as her testimony. Video Record (V.R.), July 3, 2024, Hearing – 11:41:32 – 11:43:52.

At the hearing, Jeffrey confirmed that he attempted to commit suicide and testified that he had reached a breaking point due to a combination of factors, including his cancer diagnosis, being estranged from family members, his pending divorce with Debbie, and financial issues. Jeffrey testified that he was now in a much better place and brought documentation to dispute Debbie's allegations. Jeffrey admitted to contacting Debbie on numerous occasions since their

-3-

separation, despite her requesting that he no longer contact her. He also testified that he ceased all communication with Debbie after being served the EPO while in the hospital. At the conclusion of the hearing, the family court announced it would grant Debbie a DVO to be effective for three years. V.R., July 3, 2024, Hearing – 11:45:35.

During the hearing, Jeffrey requested the court to introduce his documents related to the text messages between the parties. The family court denied the request on the premise that the documents were unnecessary to its decision-making because "if you would harm yourself, [Debbie] has a right to be afraid you could possibly harm her." V.R., July 3, 2024, Hearing – 11:45:39. The family court elaborated:

> It does not matter about those other things. You notice I haven't even talked about them because they are not relevant. You've already acknowledged it, so I only have to prove it. You've already said, 'I made calls to her knowing that she didn't want me to call her.' That's your testimony, so the law provides that if a person tries to attempt suicide, then that is an act of domestic violence, in and of itself. So, it doesn't matter what else happened that day. That is an act of domestic violence, even if you were nowhere near her.

V.R., July 3, 2024, Hearing – 11:50:50.

On July 8, 2024, the family court entered an Administrative Office of the Courts (AOC) Form 275.3. In the DVO's "additional findings" section, the

family court checked one box, finding "[f]or Petitioner against Respondent in that it was established, by a preponderance of evidence, that an act(s) of domestic violence and abuse, has occurred and may again occur . . . ."

Neither party filed a motion for additional factual findings pursuant to Kentucky Rules of Civil Procedure (CR) 52.02.  This appeal followed.

## STANDARD OF REVIEW

This Court reviews the family court's factual findings and entry of a DVO under the clearly erroneous standard.  CR 52.01; *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010).  Findings are not clearly erroneous if they are supported by substantial evidence, which is "evidence of substance and relevant consequence having the fitness to induce conviction in the mind[]" of a reasonable person.  *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted).  "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion."  *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citations omitted).

## ANALYSIS

As an initial matter, we note that Debbie failed to file a brief in compliance with the Kentucky Rules of Appellate Procedure (RAP).  This Court recognizes that both parties are proceeding *pro se*; however, this does not exempt

-5-

either party from the requirement to follow our rules. Parties who represent themselves in legal proceedings are expected to demonstrate a good faith effort to comply with the appellate rules. *Hallis v. Hallis*, 328 S.W.3d 694, 698 (Ky. App. 2010).

This Court may impose penalties under RAP 31(H). The decision whether to impose any penalties is within our discretion. *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). Considering the serious nature of domestic violence actions, we decline to exercise any penalties in this case and proceed to the merits of the appeal. *See Wright v. Wright*, 181 S.W.3d 49, 52 (Ky. App. 2005).

We shall address Jeffrey's arguments on appeal *seriatim*.

First, Jeffrey contends the family court violated his due process rights by refusing to consider the documents he proffered at the hearing, claiming his evidence would have directly refuted Debbie's allegations. We disagree.

In appealing a family court's decision to exclude evidence, a party must show: 1) the substance of the excluded evidence; 2) that it was an abuse of discretion to exclude the evidence; and 3) there was a substantial possibility the court would have reached a different result if the evidence had not been improperly

excluded.  *See* Kentucky Rules of Evidence (KRE) 103;[1] *Lewis v. Fulkerson*, 555

S.W.3d 432, 439 (Ky. App. 2017).  The preservation of an alleged error at trial or

an evidentiary hearing regarding the admission or exclusion of evidence is

governed by KRE 103, which provides, in relevant part:

> (a)  Effect of erroneous ruling.  Error may not be
> predicated upon a ruling which admits or excludes
> evidence unless a substantial right of the party is
> affected; and
>
> . . .
>
> (2)  Offer of proof.  If the ruling is one excluding
> evidence, the substance of the evidence was made
> known to the court by offer or was apparent from the
> context within which questions were asked.

An "'offer of proof must not be too vague, general, or conclusory.'

While KRE 103(a)(2) does not mandate a formal offer of proof, it does require an

indication of 'the facts sought to be elicited or the specific facts the witness would

establish.'" *Murphy v. Commonwealth*, 509 S.W.3d 34, 56 (Ky. 2017) (quoting

*Henderson v. Commonwealth*, 438 S.W.3d 335, 342 (Ky. 2014)) (citations

omitted).  After reviewing the record, we do not believe Jeffrey has identified a

---

[1] The Kentucky Rules of Evidence (KRE) "shall apply to family law cases to the extent that they are not inconsistent with these rules."  Kentucky Family Court Rules of Procedure and Practice (FCRPP) 1(5).  *See also* KRE 1101(a), which provides "[t]hese rules apply to all the courts of this Commonwealth in the actions, cases, and proceedings and to the extent hereinafter set forth."

reversible error as to the family court's denying his request to introduce the substance of the texts between the parties.

Jeffrey claims that the evidence would demonstrate that the text messages sent to Debbie did not contain threats and were not hostile. However, excluding this evidence was not an abuse of discretion because there was no factual issue regarding the content of the messages. *See* KRE 401 (relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *see also* KRE 403 (relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues[.]").

Jeffrey argues the family court abused its discretion in its excluding of witnesses prepared to testify that his behavior was non-threatening. However, this argument is not properly preserved, as Jeffrey never requested or implied that he had witnesses prepared to testify. The record also does not reflect that Jeffrey subpoenaed any witnesses to testify on his behalf pursuant to CR 45.05 or that they appeared at the hearing.

Jeffrey also asserts he had documentation and receipts demonstrating that the items he sent to Debbie were "benign and intended as gestures of goodwill, not threats." Brief at 6. However, Jeffrey never requested to introduce evidence of

-8-

the nature of items sent to Debbie, nor implied the existence of such. Likewise, no offer of proof was presented to the family court for consideration upon the court's exclusion of the evidence. KRE 103(a)(2).

As to each of the alleged evidentiary errors, having carefully reviewed the record, we conclude that Jeffrey failed to demonstrate how the evidence, if included, would create a substantial possibility that a different result could have been reached or that the alleged evidentiary error affected a substantial right under KRE 103(a). *See Lewis*, 555 S.W.3d at 439.

Next on appeal, Jeffrey argues the family court's finding of domestic violence was not supported by substantial evidence, and the entry of the DVO was an abuse of discretion. Again, we disagree.

The family court may issue a DVO where it "finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" Kentucky Revised Statutes (KRS) 403.740(1); *Hall v. Smith*, 599 S.W.3d 451, 454 (Ky. App. 2020). In the context of cases involving domestic violence, a preponderance of the evidence is evidence that "establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Hall*, 599 S.W.3d at 454. "Domestic violence and abuse" means "[p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse,

-9-

strangulation, or assault between family members or members of an unmarried couple[.]" KRS 403.720(2)(a).  Further, it is well established that this Court may affirm a lower court for any reason supported by the record.  *Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991).

The inquiry before us turns on whether substantial evidence supports a finding that Jeffrey inflicted upon Debbie a fear of imminent physical injury pursuant to KRS 403.720(2)(a).  Debbie learned of Jeffrey's suicide attempt from hospital personnel and testified that "hearing this made me scared of my safety, because if he can shoot himself, he can come and try to shoot me."  R., 1-2.

In *Ashley v. Ashley*, 520 S.W.3d 400 (Ky. App. 2017), petitioner testified that her fear of imminent physical injury stemmed from an argument which occurred in the presence of the parties' minor children, where respondent was yelling and throwing items at petitioner; smacked a tortilla chip off petitioner's arm; and called 911 before leaving the house and texting petitioner that he was going to kill himself.  *Id.* at 402.  We affirmed the granting of a DVO, holding the domestic violence findings were "based upon the escalation of [the parties'] arguments, [respondent's] alcohol use, and his suicide threat[.]"  *Id.* at 405.  This Court explained:

> [W]e cannot hold that the incident where [respondent]
> smacked the chip off of [petitioner's] arm constituted a
> physical injury within the definition of domestic violence
> or abuse.  However, the definition also includes "the

-10-

infliction of fear of imminent physical injury," which we hold [petitioner] established by a preponderance of the evidence. She testified under questioning by her attorney and the family court that she feared for her safety after [respondent], who was intoxicated, smacked the chip off of her arm and that she did not know what would have happened if 911 had not called back at that moment. [Respondent] admitted that he might have struck [petitioner] with more force because he had been drinking. **But what pushed this into the realm of domestic violence was [respondent's] text message to [petitioner] threatening to commit suicide**. Therefore, we hold that the record supports the family court's finding that domestic violence and abuse occurred.

*Id*. at 405 (emphasis added) (footnote omitted).

It is immaterial that a physical touching occurred in *Ashley*, despite there being no alleged physical contact between the parties here, because the *Ashley* Court specified that respondent's smacking the chip off petitioner's arm did not constitute domestic violence, yet still upheld the DVO. *Ashley*, 520 S.W.3d at 405. Instead, the Court emphasized respondent's escalating behavior and text message threatening to commit suicide and noted that respondent possessed a concealed carry firearms permit. *Ashley*, 520 S.W.3d at 405. *Sub judice*, Jeffrey testified that the gun he used in his suicide attempt belonged to and is registered to his adult son, who had previously given Jeffrey the gun for protection purposes. It is undisputed that Jeffrey had possession of this gun in the parties' home during their marriage.

-11-

Debbie's fear for her physical safety was reasonable as the compact timeline of events details Jeffrey's rapidly escalating behavior after the parties' marital separation, particularly on the day that culminated with his June 17, 2024, suicide attempt. At minimum, this demonstrated Jeffrey's inability to control his emotions and actions as pertained to Debbie. In her Petition and testimony, Debbie explained that on June 16, 2024, she received numerous phone calls, text messages, letters, and emails from Jeffrey; that other individuals were contacting her on Jeffrey's behalf; that Jeffrey was attempting to communicate with her adult children to ask about her; and that Jeffrey was calling her place of employment. Immediately thereafter, in the early morning hours of June 17, 2024, Debbie received a voicemail at 1:37 a.m., informing her that Jeffrey had shot himself in the chest, and a second voicemail at 2:03 a.m., informing her that Jeffrey had been rushed to the hospital. The inability of an individual to safely regulate his behavior during periods of amplified stress, escalating so far as to attempting self-inflicted serious harm, could easily terrorize family members who could become the object of such behavior. *See Hohman v. Dery*, 371 S.W.3d 780, 783 (Ky. App. 2012) (Evidence presented sufficient for court to reasonably infer that father's conduct caused mother to fear imminent physical injury where, in part, mother believed father unable to control emotions, feared his conduct would escalate, and was concerned about father's frequent drive-bys and text messages); *see also Crabtree*

-12-

*v. Crabtree*, 484 S.W.3d 316, 318 (Ky. App. 2016) (affirming DVO where it was found that respondent's threat to commit suicide in the presence of the children, though "not directed at hurting any family members," would have had the "inevitable consequence of . . . terroriz[ing] the recipients of the information.").

Standing alone, the mere threat of suicide may not constitute domestic violence. However, Jeffrey was aware his actions were inflicting mental anguish upon Debbie. Jeffrey admitted that he continued to contact Debbie against her wishes, and only ceased this pattern of behavior when he was served with the EPO at the hospital following his violent suicide attempt that took place while he was operating a motor vehicle. The family court stands in the best position to weigh the evidence and judge the credibility of witnesses who testified. *Hohman*, 371 S.W.3d at 783. Based upon the totality of the circumstances, we believe sufficient evidence was presented to support the issuance of the DVO.

Accordingly, the family court's finding of domestic violence was not clearly erroneous and was supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the DVO issued by the Jefferson Family Court on July 8, 2024, is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:          NO BRIEF FOR APPELLEE.

Jeffrey Dwayne Ashby, *Pro Se*
Louisville, Kentucky