KRAMER, CHIEF JUDGE:
Wade Lewis appeals, and Laura Fulkerson cross appeals, from the final judgment of the Oldham Family Court in which the court resolved the issues of property division and child support in the parties' dissolution action. On appeal, Wade claims the family court erred by awarding Laura the property in a certain trust and excluding the testimony of the attorney who drafted the trust based on attorney-client privilege.
*435 Laura filed a cross-appeal from the final judgment claiming the family court erred by determining that the proceeds from the sale of Wade's business were his nonmarital property, failing to award her child support, and making her equally responsible for the children's expenses despite the disparity in the parties' income.
For the reasons stated below, we affirm in part and vacate in part.
I. FACTUAL AND PROCEDURAL BACKGROUND
Wade and Laura were married on February 13, 2008, and have three children of the marriage. After multiple separations and failed attempts to reconcile, Laura filed a Petition for Dissolution of Marriage on April 3, 2013, and the family court entered a limited decree of dissolution on May 14, 2014. The facts surrounding Wade's business ventures, as well as the corpus of a trust titled the "Laura Renee Fulkerson Trust,"[1] form the fundamental disputes in this case.
Wade, along with two business partners Silas Boyle and Chris Page, started Maximum ASP in August 2000. The company was in the business of information technology and built and hosted a "cloud technology" platform for clients. According to the testimony of the attorney who drafted the business formation paperwork, the company was established as a manager-managed business and managed by Wade, Boyle, and Page. The attorney further testified that he later established the separate business entities Maximum COLO (which owned the building Maximum ASP operated out of after leaving leased space) and Maximum Holdings (which owned the holdings of the data center built by Maximum ASP).
In August 2008, Wade and Boyle bought out 200,000 shares owned by Page for the value of $1,773,750. Page had lost interest in the business and was no longer coming to work regularly. Multiple witnesses testified that Page owed a sizeable debt to the Internal Revenue Service and that this sale price was not based on a business valuation, but instead based on the "cash-on-hand" of the business and how much Page was willing to accept.
In 2010, Wade and Boyle were approached with an offer to purchase Maximum ASP, Maximum COLO, and Maximum Holdings by Cbeyond Communications.[2] The purchase price was $36,000,000 less the value of certain debts of the business. Wade received $7,413,687 as the net portion for his shares of the three Maximum businesses. Following the sale, Wade invested in a new business with Boyle, Automobile Storage Solutions, LLC.
Laura has a doctorate in veterinary medicine and started her own veterinary practice, Stonybrook Animal Hospital, with a business partner in July 2009. Laura and her business partner personally guaranteed a loan in the amount of $378,246.31 for the business. In 2012, Laura's partner filed for bankruptcy and defaulted on any further payments under the loan. Shortly thereafter, to prevent defaulting on the loan, Laura withdrew $337,620.79 from the LRF Trust to pay off the remainder of the business loan. The payment of this debt effectively gave Laura a 100% ownership *436 interest in the business.[3]
During the parties' marriage, they established two transfer on death trusts for themselves. Wade's trust was created in 2009 and Laura's aforementioned LRF Trust was created in 2011. The sum of $1,700,000 from Wade and Laura's joint bank account with rights of survivorship was deposited into each trust. The original source of these funds was the proceeds from the sale of Maximum ASP to Cbeyond Communications. The parties agree regarding these facts, however, the intent for establishing the LRF Trust is adamantly contested. It is Laura's position that the trust was a gift given to her to control exclusively, which she did. She further argues that Wade told her on numerous occasions that she could spend the money in the trust any way she wanted and that they would each control the contents of their own trusts. Conversely, Wade argues the trust was established purely for estate planning purposes to avoid future tax implications and that he never advised Laura to spend the money as she saw fit.
After the parties' final separation, the family court entered a limited decree of dissolution of marriage and orders detailing the temporary child support and parenting schedule. The parties advised the family court that the issues remaining in need of final adjudication were property division, allocation of debt, custody, parenting time, and child support.
A litany of motions in limine, motions to strike, and motions for sanctions were filed by counsel for both parties before the final hearing. The dispute regarding the testimony of the parties' estate planning attorney who drafted the LRF Trust, Ed Lowry, is of particular note to this appeal.
The first time attorney Lowry's potential testimony was placed in issue was when Laura issued a subpoena for his deposition in April 2014. The following day attorney Lowry, pursuant to CR 4 45.04, objected in writing to the subpoena.[5] At the May 2014 Case Management Conference, attorney Lowry appeared on his motion to quash Laura's subpoena.[6] He objected to being deposed based on his belief that there existed an attorney-client privilege between him and both parties. The family court then asked the parties why attorney Lowry needed to be deposed or testify at all. Wade's counsel responded that Laura would be claiming a portion of her trust was a gift, and attorney Lowry could testify whether this was true. The family court then asked the following additional question: "wouldn't it be up to the court to discern [whether it was a gift or not] based on the language of the trust and intentions of the parties?" After further discussion with counsel that day, the family court ordered that attorney Lowry not be deposed or called to testify unless both parties, in writing, waived their attorney-client privilege.[7] In response to this order, *437 Wade moved to exclude the LRF Trust document, which Laura planned to enter as an exhibit. However, the family court denied the motion in September 2014.
A few weeks before the final hearing, Wade moved to supplement his witness list stating: "[i]n light of the Order ... wherein the Court overruled [Wade's] motion to exclude evidence of the [LRF] Trust, [Wade] respectfully requests that he be allowed to supplement his Witness List to add [attorney Lowry] to testify on behalf of Wade ... only about Wade Lewis' Trust." (Emphasis added.) The family court denied Wade's motion citing the "perversion to public policy that would result if an attorney were forced to testify about matters related to privileged communications." The family court reiterated that if Laura waived her privilege in writing, as Wade had, attorney Lowry could testify. Laura did not release her privilege, and attorney Lowry was ultimately not allowed to testify at the final hearing.
The final hearing spanned two full days. Both parties called numerous witnesses, including experts, to support their respective positions. Because of the length of the hearing, volume of the testimony, and the extensive record on appeal further facts established at the hearing will be developed as required to address the specific issues presented.
At the close of the evidence, the family court allowed counsel for the parties to file a post-trial memorandum. Taking these memorandums into consideration, along with the testimony from the final hearing, the family court disposed of all remaining issues between the parties in its Findings of Fact, Conclusions of Law and Final Decree of Dissolution. Regarding the property division, the family court fashioned an equitable distribution of the property in consideration of KRS 8 403.190. The family court's determinations, relevant to the instant appeal, were the following: (1) 100% of the proceeds from the sale of Maximum ASP-and any property purchased with those proceeds that was not deemed an outright gift to Laura-is Wade's nonmarital property; (2) the LRF Trust was a gift to Laura from Wade and, therefore, is Laura's non-marital property; and (3) due to the equal time-share schedule and considerable financial resources of both parties, neither shall pay child support to the other and they both shall equally split all expenses concerning the three minor children. Wade then filed a post judgment motion pursuant to CR 59.05, which was subsequently denied.
Wade and Laura both appeal from this final order.
II. ANALYSIS
When dividing property pursuant to KRS 403.190 in a dissolution, the family court's mandate is to divide the property in an equitable fashion. Rice v. Rice , 336 S.W.3d 66, 68 (Ky. 2011). With this in mind, every ruling of the family court in this case impacted the way it analyzed any subsequent issue. First, because the proceeds from the sale of Maximum ASP filter into almost every dispute to this appeal, we must address whether the family court erred when it held that 100% of the proceeds from the sale were Wade's nonmarital property. Next, we will discern if the family court erred in determining the character of the LRF Trust corpus and, lastly, determine if the family court erred in not awarding child support to Laura and splitting the children's expenses equally.
In her cross-appeal, Laura argues that the family court erred by not classifying any of the proceeds from the Maximum *438 ASP sale as marital property. Specifically, she asserts that the business appreciated in value during the marriage due, in part, to her contributions. In her view, this appreciation should be classified as marital property. Alternatively, she argues the two new businesses (Maximum Holdings & Maximum COLO) and data center, formed during the marriage, should be classified as marital.
Wade started Maximum ASP in 2000, and the parties were married in 2008. Therefore, the business is his nonmarital property. The question is whether any increase in value would remain nonmarital. Laura correctly argues that "[a]n increase in value of nonmarital property during marriage which is the result of a joint effort of the parties establishes the increase in value of the nonmarital property as marital property." Goderwis v. Goderwis , 780 S.W.2d 39, 40 (Ky. 1989). Further, "[t]he efforts of the parties may include the contribution of one spouse as a primary operator of the business and the other spouse as primarily a homemaker." Id.
In Goderwis , the husband owned an automobile repair business before the marriage. The wife took no active role in the business, but during the course of their eighteen-year marriage the wife cared for the parties' children, maintained the marital home, and cooked for the family. The business was the only source of income for the parties. The Kentucky Supreme Court held "that the increase in value during the marriage of the garage business ... was due to the joint efforts of the parties and consequently marital property." Id.
Here, Laura testified that after each of their children were born, she stayed at home full time for a few months. As such, she argues her contribution as a "homemaker" should at least render the increase in value of the business during the marriage as marital property. The differences in these facts, and the facts in Goderwis , are apparent. The wife in Goderwis was a "homemaker" for eighteen years, and the parties had no other income. Here, Laura was a "homemaker" for a few months over the course of the marriage, and the parties had multiple sources of income. Therefore, the family court did not abuse its discretion in holding that the entirety of the proceeds from the sale of Maximum ASP were Wade's nonmarital property.
Laura further argues that the two new businesses, Maximum COLO and Maximum Holdings, which were established during the marriage for the purpose of building the $1,000,000 data center, should be classified as marital property. Addressing this issue, the family court stated:
The Court is not convinced that [the data center] added any value to Maximum ASP. [Wade] and Silas Boyle testified that the data center was intended to be a cost-saving method for Maximum ASP were they to be in business long-term, but it was not an asset of the company that Cbeyond Communications desired to purchase. The Court therefore declines to find a dollar-for-dollar value in the construction of the data center.
Maximum ASP, along with Maximum COLO and Maximum Holdings, were ultimately sold in one transaction. The latter two were only created as a cost-saving measure to house the data center used by Maximum ASP. Again, the family court did not abuse its discretion in determining that all three businesses , and the proceeds from their sale, were Wade's nonmarital property.
Turning to Wade's appeal, we must next determine whether the family court erroneously concluded Wade made an inter *439 vivos gift of the $1,700,000 LRF Trust corpus to Laura. The primary dispute surrounding this issue revolves around the family court's decision to not allow attorney Lowry's testimony regarding Wade's donative intent, or lack thereof.
Wade argues it was reversible error to predicate the admissibility of attorney Lowry's testimony on the belief that the communications between Wade, Laura, and attorney Lowry were privileged. His assignment of error regarding this issue is twofold. First, he argues that KRE 9 503(d)(5), the joint-client exception to attorney-client privilege, precludes a finding that any communications regarding the trust between Wade, Laura, and attorney Lowry are privileged. Second, even if the conversations regarding the LRF Trust are privileged, Wade argues that it was error to deny his October 2014 motion to supplement his witness list because, as explained in that motion, attorney Lowry only intended to testify about the creation of Wade's Trust, not the LRF Trust.
Wade's argument is based upon the family court's decision to exclude evidence from trial, therefore, it is his burden on appeal to demonstrate: (1) the substance of the excluded evidence; (2) that the family court abused its discretion by excluding it; and (3) that there was a substantial possibility the court would have reached a different verdict if the evidence had not been excluded. See KRE 103 ;[10] Goodyear Tire & Rubber Co. v. Thompson , 11 S.W.3d 575, 581 (Ky. 2000) (explaining the standard to reviewing a trial court's ruling admitting or excluding evidence is abuse of discretion, and the test is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles); see also Hart v. Commonwealth , 116 S.W.3d 481, 483-84 (Ky. 2003).
"The substance of the evidence can be made in an offer of proof, which has been defined as 'adducing what that lawyer expects to be able to prove through a witness's testimony.' " Murphy v. Commonwealth , 509 S.W.3d 34, 55-56 (Ky. 2017) (quoting Henderson v. Commonwealth , 438 S.W.3d 335, 339-40 (Ky. 2014) ). "While KRE 103(a)(2) does not mandate a formal offer of proof, it does require an indication of the facts sought to be elicited[.]" Id. (internal quotation marks omitted).
In the case at bar, keeping in mind that attorney Lowry was under court order to not divulge information regarding his representation of the parties, Wade made a sufficient offer of proof. Wade made clear his intention to call attorney Lowry as a witness regarding his donative intent in creating and funding the trusts in his April 2014 pretrial witness disclosure, the May 2014 Case Management conference, and again in his October 2014 motion to supplement his witness list. Taking these unique circumstances into consideration, Wade sufficiently indicated he sought to elicit the fact that both trusts were created and subsequently funded, purely for estate planning purposes.
Next, we must determine if the family court's decision to not allow attorney *440 Lowry to testify was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. Wade maintains that the decision was unsupported by sound legal principles because the family court failed to recognize the joint-client exception to attorney-client privilege, codified as KRE 503(d)(5). This exception states there are no privileged attorney-client communications "relevant to a matter of common interest between or among two (2) or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients." KRE 503(d)(5) ; see Hunt v. McCloud , 231 Ky. 801, 22 S.W.2d 285, 287 (1929).
Here, the matter of common interest was Wade's intent when he funded both trusts. There were numerous communications between the parties and attorney Lowry. As a result of these communications and meetings, attorney Lowry prepared multiple documents for the parties, including the trusts. In its November 2014 order, which ultimately barred the testimony, the family court found that: "[attorney] Lowry drafted the [LRF] Trust in 2011 and worked with both parties to do so." Once the LRF Trust was created, Wade transferred $1,700,000 into an investment account set up in the name of the trust. Based on the plain language of KRE 503(d)(5), the joint-client exception applies to the facts of this case. Consequently, the family court abused its discretion in not allowing attorney Lowry to testify.
Further, even if the joint-client exception did not apply, the family court also erroneously denied Wade's October 2014 motion to supplement his witness list. In that motion, Wade requested attorney Lowry be allowed to testify "only about Wade Lewis's Trust," which was created two years before the LRF Trust. It was funded with $1,700,000 at substantially the same time as the LRF Trust. The family court stated: "[w]hatever justice it might serve in the current case, [attorney] Lowry's testimony at trial does not outweigh the perversion to public policy that would result if an attorney were forced to testify about matters related to privileged communications," despite the fact that Wade effectively waived any privilege he held to any communications between attorney Lowry and himself.
Turning to whether there was a substantial possibility the court would have reached a different verdict if the evidence had not been excluded, we conclude there was. The only fact witnesses who testified regarding the key element in Laura's gift claim and Wade's intent in funding the LRF Trust were Wade and Laura. However, attorney Lowry would have added a third fact witness to this issue. Indeed, attorney Lowry is the only person, other than the parties, who would have first-hand knowledge regarding Wade's intent. Furthermore, the family court stated in its November 2014 order, barring attorney Lowry from testifying for the final time, that: "It is still apparent based on this Court's prior Order that [Laura] has received a benefit from Mr. Lowry's observance of the attorney-client privilege." If attorney Lowry testified that Wade deposited his nonmarital proceeds from the sale of Maximum ASP in the two separate trusts purely for estate planning purposes, there is a substantial possibility the outcome would have been different.
Lastly, pursuant to KRE 103(a) and CR 61.01, we cannot vacate a family court's judgment unless a substantial right of a party has been affected. A substantial right has been defined as a right "which is essential and that potentially affects the outcome of a lawsuit and is capable of legal enforcement and protection, as distinguished from a mere technical or procedural *441 right." Shane v. Commonwealth , 243 S.W.3d 336, 344 (Ky. 2007) (Scott, J., concurring in part and dissenting in part) (citing BLACK'S LAW DICTIONARY (7th ed. 1999)). As discussed above, the exclusion of attorney Lowry deprived Wade's right to call a third fact witness regarding an issue where the only previous fact witnesses were the parties with opposing views of Wade's donative intent. This exclusion had the potential to affect the outcome of the lawsuit, especially considering the impact the gift finding had on multiple subsequent issues. Therefore, the family court abused its discretion and committed reversible error when it did not allow attorney Lowry's testimony when determining whether there was an inter vivos gift from Wade to Laura of the $1,700,000 LRF Trust corpus.
The remaining arguments are Laura's cross-appeal that the family court erred in not awarding child support and not allocating expenses for the parties three children proportional to Wade's superior income. The family court based this decision, in part, on the fact that Laura was awarded $1,700,000 as a gift from Wade. As we have vacated and remanded the family court's gift determination, any issue as to child support and the children's expenses will necessarily have to be revisited upon remand.
III. CONCLUSION
In light of the foregoing, the judgment of the Oldham Family court is AFFIRMED to the extent that it found the proceeds from the sale of Maximum ASP were Wade's nonmarital property. As to all other issues on appeal, we VACATE the family court's judgment and REMAND for proceedings consistent with this opinion.
ALL CONCUR.

Hereinafter referred to as the "LRF Trust."

Originally, the offer was only for Maximum ASP, not Maximum COLO and Maximum Holdings. Wade and Boyle rejected that offer. Shortly thereafter, Wade and Boyle received another offer from Cbeyond Communications for the purchase of all three businesses, which they accepted.

Laura now holds promissory notes, wherein her business is the obligor, which guarantees repayment of the $337,620.79 paid from the LRF Trust.

Kentucky Rule of Civil Procedure 45.04, aptly titled "Protection of a Person Subject to Subpoena," provides a vehicle for a party served with a subpoena to object to it in writing.

May 14, 2014 was originally scheduled to be day one of a two-day trial. Because of several discovery issues, the trial was continued for a third time and a case management conference took place to address the discovery disputes.

Wade effectively waived his privilege following this order. However, despite initially requesting attorney Lowry's testimony, Laura ultimately changed her mind and refused to waive her privilege.

In relevant part, KRE 103 provides:
(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and
...
(2) Offer of proof. If the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.