RENDERED: APRIL 22, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0978-MR

WADE B. LEWIS                                                                APPELLANT

v.      APPEAL FROM OLDHAM CIRCUIT COURT
HONORABLE DOREEN S. GOODWIN, JUDGE
ACTION NO. 13-CI-00247

LAURA R. FULKERSON                                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, McNEILL, AND TAYLOR, JUDGES.

McNEILL, JUDGE: This case involves a property division dispute between former spouses Wade B. Lewis (hereafter "Wade"), and Laura R. Fulkerson (hereafter "Laura"). It has an appellate record that is necessary to cite at length in order to appropriately convey the factual and procedural foundation memorialized in a published decision issued by a previous panel of this Court:

> Wade and Laura were married on February 13, 2008, and have three children of the marriage. After

multiple separations and failed attempts to reconcile, Laura filed a Petition for Dissolution of Marriage on April 3, 2013, and the family court entered a limited decree of dissolution on May 14, 2014. The facts surrounding Wade's business ventures, as well as the corpus of a trust titled the "Laura Renee Fulkerson Trust [**LRF Trust**]," form the fundamental disputes in this case.

Wade, along with two business partners Silas Boyle and Chris Page, started Maximum ASP in August 2000. The company was in the business of information technology and built and hosted a "cloud technology" platform for clients. . . .

. . . .

In 2010, Wade and Boyle were approached with an offer to purchase Maximum ASP, Maximum COLO, and Maximum Holdings by Cbeyond Communications. The purchase price was $36,000,000 less the value of certain debts of the business. Wade received $7,413,687 as the net portion for his shares of the three Maximum businesses. Following the sale, Wade invested in a new business with Boyle, Automobile Storage Solutions, LLC.

. . . .

During the parties' marriage, they established two transfer on death trusts for themselves. Wade's trust was created in 2009 and Laura's aforementioned LRF Trust was created in 2011. The sum of $1,700,000 from Wade and Laura's joint bank account with rights of survivorship was deposited into each trust. The original source of these funds was the proceeds from the sale of Maximum ASP to Cbeyond Communications. The parties agree regarding these facts, however, the intent for establishing the LRF Trust is adamantly contested. It is Laura's position that the trust was a gift given to her to

control exclusively, which she did. She further argues that Wade told her on numerous occasions that she could spend the money in the trust any way she wanted and that they would each control the contents of their own trusts. Conversely, Wade argues the trust was established purely for estate planning purposes to avoid future tax implications and that he never advised Laura to spend the money as she saw fit.

After the parties' final separation, the family court entered a limited decree of dissolution of marriage and orders detailing the temporary child support and parenting schedule. The parties advised the family court that the issues remaining in need of final adjudication were property division, allocation of debt, custody, parenting time, and child support.

. . . .

. . . The family court's determinations, relevant to the instant appeal, were the following: (1) 100% of the proceeds from the sale of Maximum ASP – and any property purchased with those proceeds that was not deemed an outright gift to Laura – is Wade's nonmarital property; (2) **the LRF Trust was a gift to Laura from Wade and, therefore, is Laura's non-marital property**; and (3) due to the equal time-share schedule and considerable financial resources of both parties, neither shall pay child support to the other and they both shall equally split all expenses concerning the three minor children. Wade then filed a post judgment motion pursuant to CR 59.05, which was subsequently denied.

Wade and Laura both appeal from this final order.

*Lewis v. Fulkerson*, 555 S.W.3d 432, 435-37 (Ky. App. 2017) (footnotes omitted)

(emphasis added) (hereafter *Lewis I*). In its analysis, the Court observed that "[t]he

only fact witnesses who testified regarding the key element in Laura's gift claim

-3-

and Wade's intent in funding the LRF Trust were Wade and Laura." *Id*. at 440. However, the Court further observed that the attorney who drafted the LFR Trust, Ed Lowry, "would have added a third fact witness to this issue. Indeed, attorney Lowry is the only person, other than the parties, who would have first-hand knowledge regarding Wade's intent." *Id*. Ultimately, the Court held that the family court erred by barring attorney Lowry from testifying. *Id*. at 441. In so holding, the Court specifically determined that "the exclusion of attorney Lowry deprived Wade's right to call a third fact witness regarding an issue where the only previous fact witnesses were the parties with opposing views of Wade's donative intent." *Id*. Accordingly, the Court affirmed the family court's order in part, vacated in part, and remanded for further proceedings. *Id*.

On remand, the case was assigned to a different family court judge due to the retirement of the previous judge. The family court held an evidentiary hearing for what appears to be the exclusive purpose of obtaining Lowry's testimony. In an order entered on August 4, 2020, the court held that "[Wade] made a gift to [Laura] in the amount of $1,700,000. . . . [T]his asset is [Laura's] non-marital asset and shall be awarded to her as a gift." Wade appeals to this Court as a matter of right, wherein he argues that the family court failed to apply the clear and convincing standard to Laura's gift claim, and that the court clearly

-4-

erred in ruling in Laura's favor. Having considered the record and the law, we

disagree.

## ANALYSIS

In *Sexton v. Sexton*, 125 S.W.3d 258 (Ky. 2004), our Supreme Court

addressed the legal elements applicable to cases involving gifts between spouses:

> [T]he Court of Appeals set forth four (4) factors that trial
> courts should consider in determining if a transfer was a
> gift and thus a spouse's nonmarital property: one, "the
> source of the money with which the 'gift' was
> purchased," two, "the intent of the donor at that time as
> to intended use of the property," three, "status of the
> marriage relationship at the time of the transfer," and
> four, "whether there was any valid agreement that the
> transferred property was to be excluded from the marital
> property." . . . Clearly, the donor's intent is the primary
> factor in determining whether a transfer of property is a
> gift, and we likewise hold that the donor's intent is also
> the primary factor in determining whether a gift is made
> jointly to spouses or individually to one spouse. The
> donor's testimony is highly relevant of the donor's intent;
> however, the intention of the donor may not only be
> "expressed in words, actions, or a combination thereof,"
> but "may be inferred from the surrounding facts and
> circumstances, including the relationship of the
> parties[,]" as well as "the conduct of the parties[.]"

*Id*. at 268-69 (footnotes and citations omitted). *See also Hunter v. Hunter*, 127

S.W.3d 656, 660 (Ky. App. 2003) ("Whether property is considered a gift for

purposes of a divorce proceeding is a factual issue subject to the clearly erroneous

standard of review."). Furthermore, "[l]ike other nonmarital claimants of property

acquired during marriage, a party claiming that property is nonmarital by reason of

the gift exception has the burden to prove it." *Sexton*, 125 S.W.3d at 267 (footnote omitted).

The issue before the family court on remand was whether the $1,700,000 LRF Trust was a gift from Wade to Laura, or if it was for another purpose, *i.e.*, estate planning, *etc*. In our review of the family court's decision finding it to be a gift, we cannot ignore the emphasis that the Court in *Lewis I* placed on the necessity of Lowry's testimony. On appeal, Wade describes this evidence as "the evidentiary tiebreaker." However, this does not negate the consideration of any additional relevant evidence considered throughout the underlying litigation.[1]

To be clear, the Final Decree of Dissolution that was the subject of the appeal in *Lewis I* was entered on July 9, 2015. Therein, the family court discussed all issues remaining at that time including custody, property, *etc*. It totaled forty-six pages in length and was entered after a two day trial. In concluding, *inter alia*, that the LRF Trust was a gift and therefore, Laura's nonmarital property, the court considered the trust documents, the testimony of the parties, and the parties' expert

---

[1] We realize that *Lewis I* provided that "[i]f attorney Lowry testified that Wade deposited his nonmartial [property] . . . in the two separate trusts *purely for estate planning purposes*, there is a substantial possibility the outcome would have been different." *Lewis I*, 555 S.W.3d at 440 (emphasis added). However, we are not bound by this statement alone. To be clear, Laura has the affirmative burden of proving a gift. Wade need neither disprove a gift nor prove that the underlying transaction at issue be for purely estate planning purposes, although that may be sufficient to find in his favor. Nevertheless, we do not believe that this distinction materially affects the outcome here.

witness testimony. In its August 4, 2020 order that is the subject of the present appeal, the family court restated select portions of its findings previously memorialized in the Final Decree of Dissolution. And having now considered Lowry's testimony on remand pursuant to the dictates of *Lewis I*, the court entered the following findings:

> There is sufficient language in the LRF Trust to allow this Court to conclude that [Wade] intended to gift [] the corpus of the LRF Trust to [Laura]. [Wade] was well aware that his marriage to [Laura] was on less than solid ground. Additionally he was aware that [Laura] felt financially insecure and her insecurity was a reason for her staying in the marriage. [Wade] has established a pattern of making "peace offerings" to [Laura] in the form of valuable assets. Lastly, and of great importance to this Court, [Wade] could have used a number of other documents and tools to transfer money to [Laura] upon his death for her benefit. . . .
>
> Nothing in Mr. Lowry's testimony alters the prior conclusion of this Court. Although he stated his drawings appear to be representative of estate planning, they did not accurately reflect the final documents executed. . . .
>
> The bottom line is that attorney Lowry could not shed any light on the actual intent of the parties at the time the LRF Trust was created. Although he mapped out an estate plan, its design was not followed by the parties. Laura retained sole control over the LRF Trust both as settlor and trustee.

Although the family court's order and findings did not expressly cite to *Sexton*, we believe that the relevant factors were adequately considered and addressed. More

precisely, *Sexton, et al.*, were specifically cited in the court's original Final Decree of Dissolution. And contrary to Wade's argument on appeal, we do not believe that the court's findings were clearly erroneous, *i.e.*, that they were not supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence is evidence that "a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Id.* (internal quotation marks and footnotes omitted). *See also Shaida v. Shaida*, Nos. 2019-CA-0688-ME and 2019-CA-0745-ME, 2021 WL 2753950, at *6 (Ky. App. Jul. 2, 2021), *discretionary review denied* (Oct. 20, 2021) (holding that, although the family court was presented with conflicting evidence concerning the existence of a gift transfer of real estate, the Court had "no difficulty in concluding that the family court acted within its discretion in making this finding and its ultimate classification of the property was correct as a matter of law.").

In the present case, it is abundantly clear from our review of the record on appeal that there is no deficit of nuance and complexity here. Indeed, we cannot overly stress that in light of our stringent standard of review, two different trial judges have considered the evidence and held in Laura's favor. Moreover, this Court in *Lewis I* has essentially indicated that the present issue is a "close

call." Therefore, although reasonable minds may differ given the unique circumstances of this case, we cannot conclude that the family court clearly erred.

## CONCLUSION

For the foregoing reasons, we hereby affirm the Oldham Family Court's order entered on August 4, 2020.

ALL CONCUR.

BRIEFS FOR APPELLANT:

William D. Tingley
Ft. Mitchell, Kentucky

BRIEF FOR APPELLEE:

Justin R. Key
Jeffersonville, Indiana